UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON C.,[1] <br><br>    Plaintiff, <br><br>    v. <br><br> MARTIN O'MALLEY, Commissioner of Social Security, <br><br>    Defendant. | Case No. 23-cv-04966-TSH <br><br> **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 17, 21 |

## I.   INTRODUCTION

Plaintiff Aaron C. moves for summary judgment to reverse the decision of Defendant Martin O'Malley, Commissioner of Social Security, denying Plaintiff's claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq. ECF No. 17. Defendant cross-moves to affirm. ECF No. 21. Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument. For the reasons stated below, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.[2]

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 8.

## II. PROCEDURAL HISTORY

On June 22, 2021, Plaintiff filed an application for Social Security Disability Insurance and Supplemental Security Income benefits with a disability onset date of January 1, 2021. Administrative Record ("AR") 186-204. Following denial at the initial and reconsideration levels, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 102-06, 114-21. An ALJ held a hearing on June 21, 2022, and issued an unfavorable decision on March 11, 2023. AR 14-72. The Appeals Council denied Plaintiff's request for review on August 17, 2023. AR 1-6. Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

## III. ISSUES FOR REVIEW

Plaintiff raises two issues on appeal: (1) the ALJ failed to address Plaintiff's depression at step two of the analysis; and (2) the ALJ erred by failing to provide substantial evidence to reject the opinion of his treating physician, Vanessa Grubbs, M.D.

## IV. STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id.* Substantial means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up). Under this standard, which is "not high," the Court looks to the existing administrative record and asks "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* at 102 (cleaned up).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation

1   omitted). If "the evidence can reasonably support either affirming or reversing a decision," the

2   Court must defer to the ALJ's decision. *Id.* (citation omitted).

3         Even if the ALJ commits legal error, the ALJ's decision must be upheld if the error is

4   harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that,

5   despite the legal error, the agency's path may reasonably be discerned, even if the agency explains

6   its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (cleaned up). But "[a]

7   reviewing court may not make independent findings based on the evidence before the ALJ to

8   conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the

9   ALJ asserts." *Id.* (cleaned up).

## V.    DISCUSSION

### A.    Framework for Determining Whether a Claimant Is Disabled

12        A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any

13  substantial gainful activity by reason of any medically determinable physical or mental

14  impairment which can be expected to result in death or which has lasted or can be expected to last

15  for a continuous period of not less than twelve months" and (2) the impairment is "of such severity

16  that he is not only unable to do his previous work but cannot, considering his age, education, and

17  work experience, engage in any other kind of substantial gainful work which exists in the national

18  economy." 42 U.S.C. § 1382c(a)(3)(A)-(B); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012).

19  To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential

20  analysis. 20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* § 416.920(a)(4) (same

21  standard for supplemental security income). The claimant bears the burden of proof at steps one

22  through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

23        At step one, the ALJ must determine if the claimant is presently engaged in a "substantial

24  gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that

25  involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (cleaned up). Here, the

26  ALJ determined Plaintiff had not performed substantial gainful activity since March 14, 2020. AR

27  19.

28        At step two, the ALJ decides whether the claimant's impairment or combination of

1    impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

2    claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148

3    (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.

4    20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

5    impairments: degenerative disc disease of the lumbar spine with radiculopathy; right-sided

6    sciatica; mild osteoarthritis of the bilateral hips; asthma; obesity.  AR 20.

7          At step three, the ALJ evaluates whether the claimant has an impairment or combination of

8    impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the

9    "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

10   describe impairments that are considered "to be severe enough to prevent an individual from doing

11   any gainful activity." *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective

12   medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3).

13   "For a claimant to show that his impairment matches a listing, it must meet all of the specified

14   medical criteria.  An impairment that manifests only some of those criteria, no matter how

15   severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a

16   claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent

17   to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering

18   age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff

19   did not have an impairment or combination of impairments that meets the listings.  AR 21.

20         If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

21   the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do

22   despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to

23   perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,

24   that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do

25   it." 20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can

26   perform past relevant work, the claimant is not disabled. *Id.* § 404.1520(f).  Here, the ALJ

27   determined Plaintiff has the RFC to

28         perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)

> except: the claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently. The claimant can stand and walk for four hours total in an eight-hour workday and sit for six hours in an eight-hour workday. The claimant can occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch and crawl; and occasionally climb ladders, ropes or scaffolds. The claimant should avoid hazards such as unprotected heights and dangerous machinery. In addition, the claimant should avoid concentrated exposure to fumes, dust, odors, gases and poor ventilation. He can perform no fast-paced work such as assembly line work. He would be absent once per month.

AR 23-24. The ALJ also determined Plaintiff had no past relevant work. AR 31.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[3] or on the testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted). "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources such as the Dictionary of Occupational Titles ("DOT").[4] *Id.* Here, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including

- Telephone Solicitor (Dictionary of Occupational Titles (DOT)

---

[3] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)). They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability. *Id.* "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.*

[4] The DOT classifies jobs by their exertional and skill requirements. 20 C.F.R. § 404.1566(d)(1); *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) ("Although criticized as having many outdated job descriptions, the DOT is typically the starting point for VEs to identify the occupations relevant for each claimant's residual functional capacities.") (cleaned up); *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").

1        237.367-046, sedentary exertion level, unskilled SVP 2) with approximately 20,000 jobs in the national economy;

2   - Charge Account Clerk (DOT 205.367-014, sedentary exertion level, unskilled SVP 2) with approximately 17,000 jobs in the national economy;

   - Ticket Counter (DOT 219.587-010, sedentary exertion level, unskilled SVP 2) with approximately 15,000 jobs in the national economy.

AR 31-32. As such, the ALJ determined Plaintiff is not disabled. AR 32.

**B.     Dr. Grubbs's Opinion**

On January 24, 2022, Vanessa Grubbs, M.D. completed a physical medical source statement. AR 557-61. Dr. Grubbs concluded Plaintiff's chronic lumbar radiculopathy with low back pain to both sides, aggravated by standing and walking, and the psychological condition of depression affecting his physical condition, limited him to: walking no more than four blocks without rest or severe pain; sitting no more than 30 minutes at one time; standing no more than 30 minutes at one time; sitting, standing and/or walking about 2 hours in an 8-hour workday; that he would need unscheduled break every 2 hours for 15 minutes due to muscle weakness, pain, paresthesias, numbness, chronic fatigue, and adverse effects of medication; that with prolonged sitting, he needed to elevate his legs at six inches; that a hand-held assistive device is medically necessary for standing and walking due to pain, dizziness, and weakness; that he can only occasionally lift and/or carry less than 10 pounds, rarely lift and/or carry 10 pounds; rarely twist, stoop (bend), crouch/squat; that he can never climb ladders; that he is likely to be "off task" 5% of an 8-hour workday; that he is incapable of even "low stress" work; that his impairments are not likely to produce "good days" and "bad days"; and that his impairments are likely to result in 3-4 unplanned absences per month. AR 558-61.

The ALJ found this opinion "somewhat persuasive," noting Dr. Grubbs "had the opportunity to treat and examine the claimant during the adjudicative period, and provided some explanation for the assessed limitations." AR 29. However, the ALJ noted the opinion "is largely a checkbox form providing only limited evidence of objective, clinical findings to support the degree of limitations opined." *Id.* The ALJ found that

> aside from noting the claimant's spinal imaging (MRI showing

> lumbar disc herniation), the provider primarily relies on the claimant's self-reported frequency of symptoms/limitations due to chronic pain. There is no objective basis in the medical record to support the opinion finding the degree of disabling limitations assessed, particularly, the less than sedentary level sitting capacity and the opined need to use an assistive device and take extra, unscheduled breaks, and the estimated work absenteeism are not supported by the longitudinal record (e.g., no clinical findings consistent with such limitations established or supported in the treatment/exam records).

AR 29-30. The ALJ also found Dr. Grubbs's opinion

> is not consistent with the other medical evidence of record (e.g., consultative medical examiner Dr. Lewis's assessment, Ex. 9F; the claimant's neurological exams within normal limits), nor is it consistent with the provider's own treatment notes and observations (e.g., previously noted claimant's lifting limitation as 20 pounds; treatment notes (Alameda Health) do not support the extreme limitations opined, including consistently noted "normal appearance," no edema in the lower extremities, no indication of motor deficits (e.g., Ex. 3F/5; 5F/4, 9, 16); only one mention/observation claimant was using cane "since hospital discharge" in February 2022, Ex. 5F/4).

AR 30. The ALJ found the degree of severity opined by Dr. Grubbs "is also inconsistent with the claimant's reported range of activities, noted above (e.g., manages activities of daily living independently, cares for two children ages 11 and 15, household chores, meals, drives, shops) (Hearing Testimony; 9F)." *Id.*

Dr. Grubbs also completed a "Mental Residual Functional Capacity Questionnaire" on July 26, 2022, in which she rated Plaintiff as having no limitations in mental abilities secondary to his physical impairment, noted as lumbar radiculopathy, along with side effects of pain medications (drowsiness). AR 532-35. As to whether Plaintiff has a behavioral condition that exacerbates his pain or other physical symptoms, Dr. Grubbs found he "doesn't have mental limitations; only severe lumbar disc disease," adding that he does not have reduced intellectual function, and indicated his physical limitations began 15 years ago and have been "progressive." AR 535. Dr. Grubbs further opined that Plaintiff would be absent from work five days or more per month due to his impairments and related treatment. *Id.* The AL noted this opinion "is only somewhat persuasive" because Dr. Grubbs has a treatment history with Plaintiff, and the statement supports that Plaintiff's "physical impairment secondary to lumbar spine degenerative disease is severely limiting, though he has no mental impairment." AR 30. However, the ALJ again noted it is a

1  "checkbox form offering only minimal supporting objective evidence for the degree of limitations

2  opined aside from noting the claimant's diagnosis and medication side effects," and that "the

3  estimated work absenteeism is not persuasive, as it appears to be conjecture and arbitrary with no

4  supporting evidence from the record nor explanation for the degree of absenteeism (why 5 days as

5  opposed to only 1 or 2 day per month)." *Id.*

### C. Step Two

Plaintiff argues he put forth a "colorable claim" of mental impairment, and the ALJ therefore erred by failing to complete a Psychiatric Review Technique Form at step two. Pl.'s Mot. at 3. While conceding Dr. Grubbs stated he "doesn't have mental limitations," Plaintiff argues "this statement does not negate the fact that Dr. Grubbs concluded that the 'psychological condition' of 'depression' 'affect[ed]' [his] physical condition which rendered [him] 'incapable of even "low stress work."'" Pl.'s Mot. at 4 (quoting AR 558, 560).

#### 1. Legal Standard

The plaintiff has the burden to demonstrate the existence of a medically determinable impairment through medical evidence. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also* 20 C.F.R. § 404.1508 (providing claimant must establish existence of medically determinable impairment from "medically acceptable clinical and laboratory diagnostic techniques"). The Ninth Circuit has recognized, however, the step two inquiry is a "de minimis screening device used to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th. Cir. 2001) (internal quotation marks and citation omitted). Indeed, the ALJ can find an impairment or combination of impairments non-severe "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks and citations omitted.). On review, this Court's duty is to determine "whether the ALJ had substantial evidence to find that the medical evidence clearly established" Plaintiff did not have a severe mental impairment. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

#### 2. Analysis

The Court finds Plaintiff has not met his burden of showing a medically determinable

8

1  mental impairment at step two of the sequential evaluation process. To be medically
2  determinable, an impairment "must result from anatomical, physiological, or psychological
3  abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic
4  techniques." 20 C.F.R. §§ 404.1521, 416.921. "Therefore, a physical or mental impairment must
5  be established by objective medical evidence from an acceptable medical source." *Id.*; *see Ukolov*
6  *v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) ("[R]egardless of how many symptoms an
7  individual alleges, or how genuine the individual's complaints may appear to be, the existence of a
8  medically determinable physical or mental impairment cannot be established in the absence of
9  objective medical abnormalities; i.e., medical signs and laboratory findings."). Objective evidence
10 is defined as laboratory findings or clinical examination signs (20 C.F.R. §§ 404.1502(k),
11 416.902(k)), which for psychological impairments are "medically demonstrable phenomena that
12 indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought,
13 memory, orientation, development, or perception, and must also be shown by observable facts that
14 can be medically described and evaluated" (20 C.F.R. §§ 404.1502(l), 416.902(l)).

15        Here, Plaintiff has no medical signs, laboratory findings, or other objective evidence with
16 which to establish a mental impairment. Throughout the record, Plaintiff had normal mental status
17 signs, including examination findings of normal mood, affect, and behavior. *See, e.g.,* AR 333,
18 348, 351, 356, 359, 361, 399, 404, 414, 442, 447, 454, 483, 486, 493, 496. Plaintiff focuses on Dr.
19 Grubbs's January 2022 physical medical source statement, in which she checked a box that
20 depression affected his physical condition. AR 558. Plaintiff argues Dr. Grubbs opined he was
21 incapable of even low stress work due to depression. Pl.'s Mot. at 3 (citing AR 558, 560).
22 However, Dr. Grubbs did not elaborate on why she checked a box asserting that Plaintiff was
23 incapable of even low stress work, and she left blank the section of the form that asked her to
24 "please explain the reasons for [her] conclusion." AR 560. Dr. Grubbs specified that her opined
25 limitations were due solely to symptoms of "chronic pain" (AR 558) and did not explain how
26 depression related to Plaintiff's functioning, nor did she cite any objective evidence of mental
27 impairment. Instead, in her treatment notes, Dr. Grubbs consistently found no abnormalities in
28 Plaintiff's mental state. *See, e.g.,* AR 414, 442, 447, 454. Further, Dr. Grubbs's statement about

depression in January 2022 was controverted by her opinion in July 2022 that Plaintiff had no mental limitations. AR 533-35 ("[Plaintiff] doesn't have mental limitations").

Regardless, even if Dr. Grubbs had directly opined limitations due to depression, a medical opinion does not establish the existence of an impairment, nor does a diagnosis or a claimant's symptoms. 20 C.F.R. §§ 404.1521, 416.921 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."). Further, the other evidence of record supports the ALJ's finding. When submitting "disability paperwork" to Dr. Grubbs in January 2022, Plaintiff's only complaint was back pain. AR 447. Plaintiff also told Dr. Grubbs he "feels well" and did not request any mental health treatment or diagnosis. *Id.* He also denied having psychological issues during treatment. AR 347-48. When asked to list "all of the physical or mental conditions (including emotional or learning problems) that limit [his] ability to work," Plaintiff only referred to physical issues, such as spinal impairment and arthritis. AR 243. Plaintiff also stated he did not receive any treatment for a mental condition. AR 245-46. When giving another disability report upon reconsideration of his disability application, Plaintiff stated he had no new physical or mental conditions. AR 262. In his pre-hearing brief to the ALJ, Plaintiff only alleged physical impairments and made no mention of depression or any mental condition. AR 293-97. His attorney concluded this brief by stating Plaintiff was disabled "due to a combination of severe physical impairments." AR 297. Plaintiff also testified that physical conditions prevented him from working. AR 50. He did not refer to mental conditions during his hearing, including under direct questioning by his attorney. AR 43-64. Thus, like with Dr. Grubbs's January 2022 statement, the rest of Plaintiff's record fails to provide any basis or explanation as to how depression or any mental condition related to his functioning. Plaintiff also points to no other objective medical evidence from an acceptable medical source regarding any mental impairment.

In sum, the Court finds Plaintiff has not shown that Dr. Grubbs's statement about depression in January 2022 supported a mental medically determinable impairment. Accordingly, the ALJ did not err at step two.

### D. Medical Opinions

Plaintiff also argues the ALJ committed error by failing to provide substantial evidence to reject Dr. Grubbs's opinion. Pl.'s Mot. at 2.

#### 1. Legal Standard

When determining whether a claimant is eligible for benefits, an ALJ need not take every medical opinion at "face value." *Ford*, 950 F.3d at 1155. "Rather, the ALJ must scrutinize the various—often conflicting—medical opinions to determine how much weight to afford each opinion." *Cross v. O'Malley*, 89 F.4th 1211, 1213-14 (9th Cir. Jan. 5, 2024) (citing *Ford*, 950 F.3d at 1155). For Social Security claims filed after March 27, 2017, the ALJ is required to assess the persuasiveness of the medical opinion using the regulations outlined in 20 C.F.R. §§ 404.1520c and 416.920c. *See Woods v. Kijakazi*, 32 F.4th 785, 791-93 (9th Cir. 2022). These regulations "provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinions." *Cross*, 89 F.4th at 1214 (quoting 20 C.F.R. § 416.920c(a)). "Instead, ALJs must explain how persuasive they find the medical opinion by expressly considering the two most important factors for evaluating such opinions: 'supportability' and 'consistency.'" *Id.* (quoting 20 C.F.R. § 416.920c(b)(2)).

The regulations define "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations define "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

"An ALJ may discuss other factors, such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (quoting 20 C.F.R. § 416.920c(b)(2)). "Only if the ALJ finds two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record' must the ALJ then

articulate how he or she considered these other factors." *Id.* (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)–(5)).

Under the new framework, the ALJ is no longer required to "provide specific and legitimate reasons for rejecting an examining doctor's opinion." *Woods*, 32 F.4th at 787. Rather, the ALJ's decision must "simply be supported by substantial evidence." *Id.* "Even under the revised regulations, however, 'an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.'" *Cross*, 89 F.4th at 1214 (quoting *Woods*, 32 F.4th at 792).

### 2. Analysis

As noted above, the ALJ provided several reasons why Dr. Grubbs's opinion was only "somewhat persuasive." AR 29-30. First, the ALJ found Dr. Grubbs's January 2022 statement was "largely a checkbox form providing only limited evidence of objective clinical findings to support the degree of limitations opined" and discounted it because its only objective support was spinal imaging that did not justify frequent breaks or work absences. *Id.* Second, Dr. Grubbs's statement lacked any references to objective evidence of mental impairment. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (an opinion's persuasiveness is in relation to its supporting explanations and objective evidence). Third, although the ALJ agreed that Plaintiff had limitations, the ALJ discounted Dr. Grubbs's statement because it conflicted with her mostly benign treatment records and examination findings. AR 30 (citing AR 414, 442, 447, 454). In support, the ALJ cited Plaintiff's visit with Dr. Grubbs in January 2022, in which Plaintiff said he "feels well" regarding his only complaint of back pain, and that Plaintiff was mentally alert. AR 30 (citing AR 447). The ALJ also noted Dr. Grubbs's July 2022 opinion that Plaintiff had no mental limitations. *Id.*; *see* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (an opinion's persuasiveness is in relation to its consistency with other evidence). The record reflects that Plaintiff has no history of treatment or diagnosis for mental impairment with Dr. Grubbs or any other provider.

The ALJ also discounted statements from Dr. Grubbs that were "neither inherently valuable nor persuasive" because they were determinations reserved to the Commissioner. AR 30.

12

In the January 2022 evaluation, Dr. Grubbs checked the box indicating Plaintiff was "[i]ncapable of even low stress work." AR 560. She did not elaborate on this finding and left blank the subsequent question that asked her to "please explain the reasons for [her] conclusion." *Id.* Plaintiff argues "the ALJ fails to address Dr. Grubbs' limitation to 'low stress work' due to the 'psychological condition' of 'depression' exacerbating a severe painful physical impairment." Pl.'s Mot. at 5. However, Dr. Grubbs did not specify any functional limitations or work-related limitations arising from depression. Instead, Dr. Grubbs opined that Plaintiff's limitations were due solely to symptoms of "chronic pain," without explaining how depression related to Plaintiff's functioning, nor did she cite any objective evidence of mental impairment. AR 558-61. When a treating source lists a medical condition in her assessment of a claimant's functioning but does not specify any limitations or work-related limitations arising from that condition, the ALJ does not need to discuss such evidence. *See Martin v. Colvin*, 2016 WL 890106, at *12 (D. Ore. Feb. 9, 2016), *report and recommendation adopted*, 2016 WL 890923 (D. Or. Mar. 8, 2016) ("Nurse McLaughlin's evaluation form does not specify any functional limitations or work-related restrictions arising from chronic fatigue syndrome, thus precluding any argument that the ALJ discounted such probative evidence.") (citing *Houghton v. Comm'r Soc. Sec. Admin.*, 493 F. App'x 843, 845–46 (9th Cir. 2012) ("Houghton has not shown that the ALJ discounted significant probative evidence of functional limitations or work-related restrictions arising from [alleged medical conditions]. The ALJ was not required to discuss these alleged medical conditions in the absence of significant probative evidence that they had some functional impact on Houghton's ability to work."). Plaintiff appears to argue that Dr. Grubbs connected her checked box about depression with other portions of her assessment that chronic pain caused Plaintiff to be limited to less-then-sedentary work with frequent breaks and absences, but no such connection exists in the record. And, even if she had, as discussed above, such an opinion would not establish the existence of a medically determinable mental impairment. 20 C.F.R. §§ 404.1521, 416.921.

Plaintiff also argues the ALJ failed to consider the combined effects of his medically determinable impairments. Pl.'s Mot. at 2. An ALJ will consider the combined effects of a claimant's medically determinable impairments, regardless of severity, when determining his

1   RFC. 20 C.F.R. §§ 404.1545, 416.945. The ALJ did so here and included limitations in

2   Plaintiff's RFC out of "consideration of [Plaintiff's] combined impairments and distractions from

3   pain," such as "no fast-paced production work such as assembly line work and expected

4   absenteeism of one day per month[.]" AR 28. Plaintiff does not explain how such

5   accommodation failed to account for the combined effects of his medically determinable

6   impairments, let alone any depression he has experienced but failed to describe to the ALJ, Dr.

7   Grubbs, or any other source in the record.

8   Plaintiff also asserts the ALJ needed to consider the effects of depression in his case

9   because he put forth a "colorable claim of mental impairment[.]" Pl.'s Mot. at 4 (citing *Keyser v.

10  Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 725-26 (9th Cir. 2011)). But "Plaintiff did not present

11  the ALJ with clinical or diagnostic reports to show a colorable claim of mental impairment caused

12  by depression." *Hernandez v. Astrue*, 2012 WL 4466580, at *11 (N.D. Cal. Sept. 26, 2012); *see

13  also Coleman v. Colvin*, 524 Fed. App'x 325, 326 (9th Cir. Apr. 19, 2013) ("[B]ecause Miss

14  Coleman failed to establish a medically determinable mental impairment, she necessarily also

15  failed to establish a colorable claim of mental impairment such that the ALJ had no duty to apply

16  the special psychiatric review technique and determine her degree of functional limitation.").

17  Similarly, Plaintiff's argument about the applicable technique to rate medically determinable

18  mental impairments does not apply here because of the lack of any acceptable evidence of mental

19  impairment. Pl.'s Mot. at 3; *see Bowman v. Astrue*, 2011 WL 3323383, at *2 (C.D. Cal. Aug. 2,

20  2011) ("Because there was no medical evidence that Bowman had a medically determinable

21  mental impairment, the ALJ had no duty to rate Bowman's alleged mental impairment [as dictated

22  in 20 C.F.R. §§ 404.1520a, 416.920a)]"). Instead, as discussed above, Dr. Grubbs's January 2022

23  statement that depression affected Plaintiff's physical functioning was without any objective or

24  diagnostic support in the record.

25  In sum, the Court finds the ALJ provided a valid explanation supported by substantial

26  evidence to reject Dr. Grubbs's opinion in part. As such, the decision must be affirmed.

## VI.   CONCLUSION

28  For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS**

14

Defendant's cross-motion.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: August 15, 2024

_____
THOMAS S. HIXSON
United States Magistrate Judge